DONN W. GRIFFITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffith v. Commissioner
Docket No. 4477-81.
United States Tax Court
T.C. Memo 1983-278; 1983 Tax Ct. Memo LEXIS 509; 46 T.C.M. (CCH) 189; T.C.M. (RIA) 83278; May 19, 1983. Arthur H. Thomas, Jr., for the petitioner. James E. Rogers, Jr., for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in the amount of $2,760.00 in petitioner's 1977 Federal income tax. After concessions, the sole issue for decision is whether certain payments made by petitioner to his ex-wife constituted deductible alimony under section 215. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Dublin, Ohio, when he timely filed his 1977 individual Federal income tax return with the Internal Revenue Service Center, Cincinnati, Ohio, and when he filed his petition in this case. Petitioner was married to Judith M. Griffith (hereinafter "Judith") on September 11, 1965. *511 At the time of their marriage, petitioner had only nominal assets and Judith had no assets. While married, petitioner attended school to become a veterinarian and sold insurance. After graduating in 1968, petitioner did relief work for other veterinarians and also continued to sell insurance. In 1970, petitioner started his own veterinary practice at which he worked throughout the remaining years of the marriage. Prior to 1970, Judith worked as a school teacher and earned a total of $17,000 during a three year period. After that time, Judith worked only about four hours per week as a bookkeeper assisting petitioner in his practice until February of 1975. During the course of the marriage, petitioner acquired two real properties, one located in Dublin, Ohio, which served as the couple's residence as well as petitioner's veterinary clinic, and a second, located in Columbus, Ohio, at which petitioner maintained an additional animal clinic. Both properties were titled in petitioner's name alone. Judith was granted a divorce from petitioner effective March 1, 1976, in an action in the Court of Common Pleas of Franklin County, Ohio, Division of Domestic Relations. In its decision *512 in that case, the court found: * * * [T]he parties are joint owners of the real property located at 3859 W. Dublin-Granville Road, Dublin, Ohio and 3164 Riverside Drive, Columbus, Ohio; miscellaneous personal property used in [petitioner's] clinics; miscellaneous household furnishings; 1968 Lincoln; 1971 Plymouth and two boats. The existing equities of the real and personal property is approximately $50,000.00. The court awarded to Judith one automobile and household furnishings then in her possession, as well as $25,000.00 which petitioner was to pay to her. Petitioner was awarded the real property owned by the parties, certain household furnishings, his personal business property, one automobile, and two boats. In addition, petitioner was ordered to pay to Judith $500.00 per month as alimony until September 1, 1976. The decision of the Court of Common Pleas in the divorce action was appealed to the Court of Appeals of Franklin County, Ohio. On November 12, 1976, the Court of Appeals rendered its decision in the case. Therein, the court found "no error or abuse of discretion on the part of the trial court in awarding $25,000 to [Judith] as part of the property division. *513 " The court noted the award of both real properties, necessarily including the personal residence, to petitioner to allow him to continue his veterinary practice. The court concluded: "Under these circumstances, the award of $25,000 in cash to [Judith] as her share of the accumulated property of the parties is not unreasonable." The court also modified the trial court's decree "so to eliminate the termination of the alimony payments on September 1, 1976, leaving them for an indefinite period until further order of this court." The decision of the Court of Appeals was appealed to the Supreme Court of Ohio on December 14, 1976. However, prior to any resolution by the Supreme Court, the parties entered into an agreement which was filed with the Court of Common Pleas and reported as a final judgment entry by that court on January 19, 1977. It provided in part: The Court finds that the parties have agreed that the obligation to pay $500.00 per month from [petitioner] to [Judith] as alimony shall continue until June 1, 1977, when it shall terminate. The Court further finds that the parties have agreed that in lieu of the $25,000.00 obligation imposed April 21, 1976 [effective *514 March 1, 1976], [petitioner] shall be obligated to make payments to [Judith] totalling $28,300.00, over a period of one hundred forty-one and 1/2 months, of $200.00 per month beginning January 1, 1977, and ending November 1, 1988. The parties have agreed that the obligation to pay the $200.00 per month for 141-1/2 months shall be secured by a mortgage of the real estate owned by [petitioner]. The parties entered into this agreement in order to prevent petitioner from having to file for bankruptcy. It was petitioner's understanding that, because the $200.00 monthly payments to Judith pursuant to the negotiated agreement would extend for more than ten years, they would be deductible by him as alimony. During 1977, petitioner made eleven payments to Judith of $200.00 each, totalling $2,200.00. He claimed this amount as an adjustment to income for "alimony paid" on his 1977 tax return. [2] In his notice of deficiency, respondent disallowed this claim on the ground that the payments did not constitute deductible alimony under section 215. *515 OPINION The deductibility of alimony under section 215 [3] is determined by reference to section 71. To be deductible by a husband, a payment must be correspondingly includable in the gross income of a wife. Section 71(a)(1) sets forth the general rule for includability of payments received pursuant to a decree of divorce or separate maintenance. It states: If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. The *516 requirements of section 71 and, by reference, of section 215, make clear that payments are eligible for inclusion by the wife and deduction by the husband only where they arise "because of the marital or family relationship." Payments arising from such relationship are to be distinguished from payments attributable to divisions of marital property. Unlike alimony payments, payments made as property settlements are outside the purview of sections 71 and 215. The treatment of property payments was explained in our decision in Jackson v. Commissioner,54 T.C. 125, 129 (1970), in which we stated: We have recognized on a number of occasions that where there is a division of property or where the husband makes payments in satisfaction of property rights of the wife the amounts received by the wife are capital in nature and are neither includable in her gross income under section 71 nor deductible by the husband under section 215. See also Watkins v. Commissioner,53 T.C. 349 (1969); Thompson v. Commissioner,50 T.C. 522 (1968); Price v. Commissioner,49 T.C. 676 (1968).Thus, payments may be deductible as alimony only *517 where they are in the nature of support rather than in settlement of some property interest. See section 1.71-1(b)(4), Income Tax Regs.
In evaluating whether a particular payment constitutes support or property settlement, the labels assigned by either the parties or the court are not determinative. Gamill v. Commissioner,73 T.C. 921 (1980); Thompson v. Commissioner,supra;Bardwell v. Commissioner,38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963). Rather, examination of surrounding facts and circumstances is required. Gamill v. Commissioner,supra;Jackson v. Commissioner,supra;Lambros v. Commissioner,459 F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of this Court. The surrounding facts in the instant case are clear: Neither petitioner nor Judith had any significant assets at the time of their marriage. All assets owned at the date of their divorce were acquired during the course of their marriage. The Court of Common Pleas determined existing equities to be $50,000.00 and further determined Judith's interest therein to be one-half, *518 or $25,000.00. This determination was made despite the titling of real properties in petitioner's name alone, and it was specifically upheld by the Court of Appeals. The award of $25,000.00 to Judith was made in settlement of her interest in the couple's jointly-owned property. A cash settlement, rather than a physical division of property, was required to accommodate petitioner's interest in maintaining the animal clinics from which he made his living. The property settlement was separate and distinct from the additional award of alimony arising from the marital obligation of support. Furthermore, unlike the alimony award, which could be adjusted to conform to changed circumstances, [4] the $25,000.00 was an established obligation which would not terminate upon death, remarriage, or other contingent events. *519 Petitioner argues that an interpretation of local law leads to the conclusion that the $25,000.00 award to Judith did not constitute a property settlement. [5] Such conclusion files in the face of our above analysis of the circumstances leading to the award and is inconsistent with the decisions of both the trial court and the state Court of Appeals. It is clear that, as of the November 12, 1976 date of the Court of Appeals decision, petitioner owed to Judith $25,000.00 as a property settlement resulting from their divorce. The nature of this payment was specified in the court opinions and was reasonable under the circumstances. *520 The subsequent negotiated agreement between the parties did not alter the character of this obligation. It merely amended the amount and payment terms to suit petitioner's depressed financial condition. The terms of the agreement itself support this interpretation. Thereunder, as incorporated in the final judgment entry of the Court of Common Pleas, the $28,300.00 obligation payable over a period of 141-1/2 months is agreed to "in lieu of the $25,000 obligation." This substituted obligation is distinguished from the $500.00 monthly alimony obligation, discussed separately in the agreement and continued until June 1, 1977. Petitioner's understanding as to the deductibility of payments under section 215 relates to the provisions of section 71(c). Under section 71(c)(1), installment payments in partial discharge of a principal sum obligation are not treated as periodic payments qualifying under the general rule of section 71(a). However, section 71(c)(2) provides an exception to this restriction where the payment period extends for more than ten years. However, this temporal requirement is relevant only in determining whether a particular payment method is permissible *521 for sums otherwise within the ambit of sections 71 and 215. Where the threshold hurdle of character of payment under section 71(a) has not been cleared, the subsequent question of manner of payment need not be addressed. Therefore, petitioner's understanding of the section 71(c)(2) exception to the periodicity requirement of section 71(a) is not relevant to our conclusion and holding under petitioner's circumstances. Accordingly, we need not address this contention. We have considered petitioner's other arguments and find them unpersuasive. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
2. The total adjustment claimed was $7,200.00, which included amounts paid pursuant to the earlier court order requiring payments of $500.00 per month and incorporated into the terms of the negotiated agreement. However, only the deductibility of the $2,200.00 attributable to the eleven payments of $200.00 each is in dispute.↩
3. Section 215(a) provides in relevant part: "GENERAL RULE - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includable under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *"↩
4. The alimony award by the Court of Common Pleas was to terminate as of September 1, 1976. The court concluded that Judith would be able to complete courses necessary for recertification as a teacher by that date and would no longer require support payments from petitioner. However, the Court of Appeals found that "[T]he evidence as to the availability of teaching positions was that they were difficult to obtain" and "[T]here was no evidence upon which it could be reasonably concluded that [Judith] would become employed effective September 1, 1976, with compensation sufficient to support herself". Therefore, the Court of Appeals removed the automatic termination feature from the trial court's decision and ordered its judgment amended to require alimony payments "until further order of the court".↩
5. Specifically, petitioner asserts that the decision of the Supreme Court of Ohio in Wolfe v. Wolfe,46 Ohio St. 2d 399, 350 N.E. 2d 413 (1976), provides only prospective delineation between property and support awards. Our understanding of Wolfe is otherwise. The prospective application of the opinion deals not with the characterization of awards, but only with the court's continuing modification jurisdiction as to alimony sustenance awards based upon agreement of the parties. See 350 N.E. 2d at 427. In fact, where the distinction between types of payments was clear in the facts of Wolfe itself, the court applied its rule retroactively. Thus, the Wolfe case is not applicable to the situation before us. In the absence of any applicable decision by the state's highest court, we are not bound by any state court's decision on an underlying state law issue. Commissioner v. Estate of Bosch,387 U.S. 456 (1967). In any event, the labels applied by state courts are not controlling, and surrounding facts and circumstances must be examined. See discussion supra of Gamill v. Commissioner,supra;Thompson v. Commissioner,supra;Bardwell v. Commissioner,supra;Jackson v. Commissioner,supra; and Lambros v. Commissioner,supra.↩